26SL-CC05903
Electronically Filed - St Louis County - August 26, 2026 - 04:42 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**
**TWENTY-FIRST JUDICIAL CIRCUIT**

**GARY WAYNE NOVACK,**

Plaintiff,

**v.**

**ART'S LAWN MOWER SHOP, INC.,**
Serve Registered Agent:
Merna Rikard
15 Black Jack Court
Florissant, Missouri 63033

**and**

**KUBOTA CREDIT CORPORATION, U.S.A.,**
a foreign corporation,
Serve Registered Agent:
CT Corporation System
5661 Telegraph Rd. Ste. 4B
St. Louis, Missouri 63129-4275

Defendants.

Case No. _______________

Division No. ____________

**JURY TRIAL DEMANDED**

**PETITION FOR RESCISSION, DAMAGES, AND OTHER RELIEF**

**COMES NOW** Plaintiff Gary Wayne Novack ("Plaintiff" or "Mr. Novack"), by and through counsel, and for his Petition against Defendants Art's Lawn Mower Shop, Inc. ("Art's") and Kubota Credit Corporation, U.S.A. ("KCC"), states and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Gary Wayne Novack is an individual residing at 7719 Wood Station Road, Alton, Illinois 62002.

2. Defendant Art's Lawn Mower Shop, Inc. is, on information and belief, a corporation organized under the laws of the State of Missouri, with its principal place of business and registered office at 15 Black Jack Court, Florissant, Missouri 63033, in St. Louis County, Missouri. Art's is, and at all relevant times was, a retail dealer of Kubota outdoor power

Electronically Filed - St Louis County - August 26, 2026 - 04:42 PM

equipment and a “merchant” with respect to goods of the kind sold to Plaintiff, within the meaning of § 400.2-104 RSMo.

3. Defendant Kubota Credit Corporation, U.S.A. is, on information and belief, a corporation organized under the laws of the State of California, authorized to and regularly transacting consumer financing business throughout the United States, including in the State of Missouri and St. Louis County, Missouri, through its relationships with Kubota equipment dealers such as Art’s.

4. KCC is the assignee and holder of the Retail Installment Contract and related Consumer Credit Application (Account No. ending 3950) that financed Plaintiff’s purchase of the mower described below, and is, on information and belief, the current holder of that contract.

5. This Court has personal jurisdiction over Art’s because Art’s is a Missouri corporation that regularly conducts business, and at all relevant times conducted the transactions giving rise to this action, in St. Louis County, Missouri.

6. This Court has personal jurisdiction over KCC because KCC transacts business in Missouri, financed a consumer transaction that Art’s, its dealer-partner, executed in St. Louis County, Missouri, and purposefully availed itself of the privilege of conducting business in this State, such that the exercise of jurisdiction over KCC comports with due process and Missouri’s long-arm statute, § 506.500 RSMo.

7. Venue is proper in St. Louis County, Missouri pursuant to § 508.010 RSMo because Defendant Art’s registered office and principal place of business is located in St. Louis County, and because the acts and transactions giving rise to Plaintiff’s claims — including the sale, financing, and multiple attempted repairs of the mower — occurred substantially in St. Louis County, Missouri.

8. This Court has subject-matter jurisdiction over this action pursuant to Article V, § 14 of the Missouri Constitution, and the amount in controversy exceeds the jurisdictional minimum of this Court.

## GENERAL ALLEGATIONS

9. On or about January 26, 2024, Plaintiff purchased a new 2024 Kubota ZD1211 diesel zero-turn mower (24.8 HP, 60″ deck), Serial No. KBGGDCA0LPGG62859 (the “Mower”), from Art’s for a total purchase price of $18,639.00, plus a delivery fee and financing/documentation charges. See Equipment Invoice No. E927355, attached as Exhibit 1.

Electronically Filed - St Louis County - August 26, 2026 - 04:42 PM

10. Plaintiff financed the purchase through KCC under Retail Installment Contract/Account ending 3950, at 0% APR for sixty (60) months, with monthly payments of $298.98 beginning February 26, 2024. See KCC financing documents, attached as Exhibit 2.

11. Plaintiff purchased the Mower primarily for personal, family, and household purposes — specifically, to maintain his approximately 3½-acre residential property — and reasonably relied on Art's representations and on the parties' duties of good faith and fair dealing in completing this substantial purchase.

12. Plaintiff maintained the Mower as directed by Art's and the manufacturer. On April 19, 2025, approximately fifteen months after purchase and with only 39.5 hours of use, Plaintiff returned the Mower to Art's for a full manufacturer-recommended service. See Art's Repair Invoice No. W965407A, attached as Exhibit 3.

13. On June 19, 2025, with only approximately 56 hours of use, the Mower abruptly shut off during normal mowing operation. Upon inspection, Plaintiff discovered that the engine coolant reservoir was completely empty, as shown in the photograph below.




*Mower instrument panel showing 56.9 hours and active fault/warning indicators (June 19, 2025).*

Electronically Filed - St Louis County - August 26, 2026 - 04:42 PM

14. The following day, June 20, 2025, Plaintiff reported the failure to Art's service department and was told he would be contacted to schedule a repair. Plaintiff refilled the coolant reservoir with coolant purchased from Art's, finished mowing in roughly twenty minutes, and the Mower again shut off and would not restart for approximately one hour.

15. On June 30, 2025, Plaintiff trailered the Mower to Art's for repair. Art's did not offer Plaintiff a loaner mower. As a result, Plaintiff was without a functioning mower for the bulk of the 2025 growing season and was forced to repeatedly borrow and haul a mower from another town to maintain his property.

16. On July 10, 2025, Art's owner, Marlon, advised Plaintiff that: (a) a loose clamp had caused the coolant to leak, explaining the empty reservoir; (b) the engine oil filter contained only about a tablespoon of oil; and (c) metal shavings were present in the new oil and oil filter. See Art's Repair Invoice No. W966788, attached as Exhibit 4. Art's written invoice confirms that the unit was overheating, that the coolant was "very low," and that Art's "tightened leaking radiator clamps" and performed a break-in engine oil change. Metal in the oil after only approximately 56 hours of operation is a hallmark of internal component failure (e.g., bearings or bushings), not operator misuse.

17. The photograph below, taken from the Mower's coolant reservoir and cooling system, depicts the condition of the equipment during this period.




*Engine coolant reservoir and cooling system components after the loose-clamp coolant leak.*

Electronically Filed - St Louis County - August 26, 2026 - 04:42 PM

18. On July 11, 2025, at the manufacturer Kubota's direction, Art's performed only a compression test — which evaluates the top end of the engine (rings, pistons, cylinder walls) — and declined Plaintiff's request to drop the oil pan to identify the source of the metal shavings. Kubota elected merely to "monitor the oil" rather than diagnose the root cause.

19. On or about July 18, 2025, Art's offered Plaintiff only $8,900 as a trade-in credit toward a replacement unit — an approximately $10,000 loss on a mower Plaintiff had purchased roughly eighteen months earlier for $18,639 — and instructed Plaintiff to keep using the Mower until it reached 100 hours.

20. From approximately August 18 through December 2, 2025, the Mower sat at Sievers Equipment Co., an authorized Kubota dealer, which was shown video of the failures, test-drove the unit several times with four different operators, and ultimately could not diagnose or repair the problem. Sievers' own work order records that "Unit has been to ARTS many times and they will not fix it" and that Sievers "found no issues" despite the documented failures, at 69.6 hours. See Sievers Equipment Co. Work Order No. WZ15838, attached as Exhibit 9.

21. The manufacturer's warranty on the Mower expired on February 18, 2026, after the Mower had spent the majority of the 2025 mowing season sitting in dealer shops without an effective repair.

22. The defect did not resolve. On or about April 14–16, 2026, the Mower again shut off during normal mowing and repeatedly failed to restart. A witness, Ashley Garrison, observed the failure and recorded video of the Mower failing to start on level ground. See Witness Statement of Ashley Garrison, attached as Exhibit 6.

23. The photograph below depicts the Mower stranded in the field following one such failure.



*The Mower stranded in the field after shutting off and failing to restart during normal mowing.*

Electronically Filed - St Louis County - August 26, 2026 - 04:42 PM

24. On June 5, 2026, Ralph R. Pickett, President of North General Auto Electric, Inc. and a professional small-engine/mechanical technician, independently inspected and test-operated the Mower. Mr. Pickett replicated the very shut-off failure Plaintiff reported and found no evidence of tampering, misuse, unauthorized modification, or lack of maintenance by Plaintiff. See Inspection Statement of Ralph R. Pickett, attached as Exhibit 5.

25. On July 7 and July 8, 2026, Plaintiff's counsel sent Art's a Notice of Duty to Preserve Evidence and a formal written demand for rescission and full refund, with a copy provided to KCC pursuant to the FTC Holder Rule, 16 C.F.R. § 433.2. More than thirty (30) days have elapsed and Art's has failed and refused to provide the requested relief.

26. As a direct and proximate result of the conduct described above, Plaintiff has suffered ascertainable losses of money and property, including the purchase price and finance charges paid for a defective and unmerchantable mower, consequential damages including loss of use and the cost of hauling and borrowing a substitute mower, and aggravation, inconvenience, and emotional distress, and Plaintiff continues to incur damages.

## COUNT I — VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT, §§ 407.010, 407.020, 407.025 RSMo (AGAINST ART'S)

27. Plaintiff incorporates by reference each and every allegation set forth above as if fully set forth herein.

28. The Mower is "merchandise" as defined in § 407.010(4) RSMo, and Art's sale of the Mower to Plaintiff was made "in connection with the sale" of merchandise in trade or commerce within the meaning of § 407.020.1 RSMo.

29. Plaintiff purchased the Mower primarily for personal, family, and household purposes.

30. In connection with the sale of the Mower, Art's engaged in unlawful practices in violation of § 407.020 RSMo, including, without limitation: (a) misrepresenting the quality, condition, and reliability of the Mower; (b) concealing and omitting material facts regarding known or reasonably knowable defects in the Mower, including the internal engine defect evidenced by metal shavings in the oil; (c) failing to disclose that the Mower suffered from a recurring, undiagnosed shut-off defect notwithstanding multiple repair attempts; and (d) engaging in other unfair practices, including offering a grossly inadequate trade-in credit while instructing Plaintiff to continue operating a Mower known to be defective.

Electronically Filed - St Louis County - August 26, 2026 - 04:42 PM

31. Art's unlawful practices were the direct and proximate cause of an ascertainable loss of money and property suffered by Plaintiff, including but not limited to the purchase price, finance charges, consequential damages, and diminution in value of the Mower.

32. Art's conduct was performed willfully, wantonly, and/or with reckless disregard for Plaintiff's rights, entitling Plaintiff to an award of punitive damages pursuant to § 407.025.1 RSMo.

33. Pursuant to § 407.025.1 RSMo, Plaintiff is entitled to recover his actual damages, including damages for aggravation and emotional distress, punitive damages, and his reasonable attorneys' fees and costs.

**WHEREFORE**, Plaintiff prays for judgment against Defendant Art's Lawn Mower Shop, Inc. on Count I for actual damages, pre- and post-judgment interest, attorneys' fees and costs pursuant to § 407.025 RSMo, and for such other and further relief as the Court deems just and proper.

## COUNT II — REVOCATION OF ACCEPTANCE, § 400.2-608 RSMo (AGAINST ART'S)

34. Plaintiff incorporates by reference each and every allegation set forth above as if fully set forth herein.

35. The Mower suffers from a nonconformity — a recurring, undiagnosed internal engine and cooling-system defect causing the Mower to shut off and fail to restart during normal operation — that substantially impairs its value to Plaintiff.

36. Plaintiff's acceptance of the Mower was reasonably induced by the difficulty of discovering the defect before purchase and by Art's and the manufacturer's assurances that the Mower would be repaired, and Plaintiff reasonably relied on Art's repeated representations that the defect could and would be corrected.

37. Plaintiff revoked his acceptance of the Mower within a reasonable time after he discovered, and Art's should have discovered, the grounds for revocation, and before any substantial change in the condition of the Mower not caused by its own defects, by way of the demand letter dated July 8, 2026, and hereby further revokes his acceptance of the Mower.

38. Plaintiff has notified Art's of his revocation of acceptance and is entitled to recover from Art's so much of the purchase price and finance charges as have been paid, together with incidental and consequential damages, upon return of the Mower.

**WHEREFORE**, Plaintiff prays for judgment against Defendant Art's Lawn Mower Shop, Inc. on Count II rescinding the transaction, awarding Plaintiff a refund of all amounts paid,

Electronically Filed - St Louis County - August 26, 2026 - 04:42 PM

incidental and consequential damages, pre- and post-judgment interest, costs, and for such other and further relief as the Court deems just and proper.

**COUNT III — BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY, § 400.2-314 RSMo (AGAINST ART'S)**

39. Plaintiff incorporates by reference each and every allegation set forth above as if fully set forth herein.

40. Art's is a merchant with respect to zero-turn mowers and equipment of the kind sold to Plaintiff.

41. Art's impliedly warranted that the Mower was merchantable and fit for the ordinary purposes for which such equipment is used, pursuant to § 400.2-314 RSMo.

42. The Mower was not merchantable at the time of sale and thereafter, in that it repeatedly and unpredictably shuts off and fails to restart during normal mowing operation, and exhibits internal engine contamination inconsistent with equipment fit for its ordinary purpose.

43. As a direct and proximate result of Art's breach of the implied warranty of merchantability, Plaintiff has sustained damages, including the diminished value of the Mower, consequential damages, and incidental expenses.

**WHEREFORE**, Plaintiff prays for judgment against Defendant Art's Lawn Mower Shop, Inc. on Count III for damages, incidental and consequential damages, pre- and post-judgment interest, costs, and for such other and further relief as the Court deems just and proper.

**COUNT IV — BREACH OF EXPRESS WARRANTY, § 400.2-313 RSMo (AGAINST ART'S)**

44. Plaintiff incorporates by reference each and every allegation set forth above as if fully set forth herein.

45. Art's and/or the manufacturer made affirmations of fact and promises regarding the Mower, including its quality, reliability, and fitness for use, and undertook to repair the Mower under warranty, which affirmations and undertakings became part of the basis of the bargain between Plaintiff and Art's.

46. Art's breached these express warranties by delivering, and by failing after repeated attempts to repair, a Mower that does not conform to the affirmations and promises made, and by retaining a defective unit despite multiple documented repair attempts.

Electronically Filed - St Louis County - August 26, 2026 - 04:42 PM

47. As a direct and proximate result of Art's breach of express warranty, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff prays for judgment against Defendant Art's Lawn Mower Shop, Inc. on Count IV for damages, incidental and consequential damages, pre- and post-judgment interest, costs, and for such other and further relief as the Court deems just and proper.

## COUNT V — VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2301, ET SEQ. (AGAINST ART'S)

48. Plaintiff incorporates by reference each and every allegation set forth above as if fully set forth herein.

49. The Mower is a "consumer product" within the meaning of 15 U.S.C. § 2301(1), and Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 2301(3).

50. Written and implied warranties, within the meaning of 15 U.S.C. § 2301(6)–(7), were extended in connection with the sale of the Mower.

51. Art's failure to remedy the Mower's defects after a reasonable number of attempts constitutes a breach of written and implied warranties under the Magnuson-Moss Warranty Act.

52. Pursuant to 15 U.S.C. § 2310(d), Plaintiff is entitled to recover damages and, as a prevailing consumer, his costs and reasonable attorneys' fees.

**WHEREFORE**, Plaintiff prays for judgment against Defendant Art's Lawn Mower Shop, Inc. on Count V for damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 2310(d), and for such other and further relief as the Court deems just and proper.

## COUNT VI — CLAIMS AND DEFENSES AGAINST HOLDER, 16 C.F.R. § 433.2 (AGAINST KCC)

53. Plaintiff incorporates by reference each and every allegation set forth above as if fully set forth herein.

54. Plaintiff's purchase of the Mower was financed pursuant to a consumer credit contract arising from a "purchase money loan" transaction and/or a retail installment contract within the meaning of the FTC Holder Rule, 16 C.F.R. § 433.2, which contract was assigned to and is held by KCC.

55. On information and belief, the contract governing Plaintiff's financing contains, or was required by law to contain, the notice prescribed by 16 C.F.R. § 433.2, preserving

Electronically Filed - St Louis County - August 26, 2026 - 04:42 PM

Plaintiff's claims and defenses against Art's for assertion against KCC as holder of the contract.

56. By virtue of the FTC Holder Rule and the terms of the financing contract, KCC is subject to all claims and defenses that Plaintiff could assert against Art's arising out of the sale of the Mower, including those set forth in Counts I through V above, up to the amounts paid by Plaintiff under the contract.

57. Plaintiff's counsel provided KCC with formal written notice of Plaintiff's claims and defenses against Art's by copy of the July 8, 2026 demand letter.

58. KCC remains the holder of the financing contract and, pursuant to 16 C.F.R. § 433.2, is liable to Plaintiff to the same extent Art's is liable, up to amounts paid by Plaintiff under the contract, and Plaintiff is further entitled to an order unwinding the financing and relieving Plaintiff of further payment obligations to KCC in connection with the rescission sought in Count II.

**WHEREFORE**, Plaintiff prays for judgment against Defendant Kubota Credit Corporation, U.S.A. on Count VI to the extent of amounts paid by Plaintiff under the financing contract, for an order unwinding the financing and relieving Plaintiff of further payment obligations, for costs, and for such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Gary Wayne Novack respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally where applicable, and award Plaintiff:

(a) Full rescission of the transaction and a refund of the $18,639.00 purchase price and all finance charges and payments made by Plaintiff, together with satisfaction of the remaining balance owed to KCC or coordination with KCC to unwind the financing;

(b) In the alternative, actual and consequential damages in an amount to be proven at trial, including diminution in value, loss of use, and hauling and substitute-equipment costs;

(c) Damages for aggravation and emotional distress;

(d) Reasonable attorneys' fees and costs pursuant to § 407.025 RSMo and 15 U.S.C. § 2310(d);

(e) Pre-judgment and post-judgment interest as allowed by law;

(f) Costs of this action; and

(g) Such other and further relief as the Court deems just and proper.

Electronically Filed - St Louis County - August 26, 2026 - 04:42 PM

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**DONNER APPLEWHITE**
**ATTORNEYS AT LAW**

By: /s/ Christian T. Misner
Christian T. Misner
Attorney at Law, #65572
5205 Hampton Ave.
St. Louis, MO 63109
Phone: (314) 240-5351
Facsimile: (888) 785-4461
Email: christian.misner@da-lawfirm.com

**Attorney for Plaintiff Gary Wayne Novack**